May I address the court from the table, Your Honor? Yes, please. Are you wearing a microphone? I have one here. Okay. Good morning, Your Honor. May it please the court. The veterans' claim in this case had been pending for 12 years, when the veterans' court issued a favorable ruling conclusively establishing a service connection in his favor for his injuries. The veteran, Mr. Padgett, died after the cause was submitted, but before the decision issued. In these circumstances, the veterans' court had discretion to allow his decision to remain effective, and had it done so, that decision would have had preclusive effect in Mrs. Padgett's, his surviving spouse's, claim for accrued benefits under Section 5121. But the veterans' court erroneously concluded that it had no discretion, that it must recall its mandate, vacate the decision, and dismiss the appeal. The veterans' court failed to address the arguments raised by counsel and by the dissent, which showed that the court had discretion in the matter. This failure to exercise discretion was an error of law, which this court reviews without deference. Counsel below argued that the veterans' court had inherent power in the specific factual circumstances to allow its decision to remain effective, and the dissent by Judge Castle also noted a number of cases in which the Supreme Court has held that the courts have inherent authority to let their decision stand when a party has died after the cause was submitted. Nothing in the veterans' laws precludes a court from exercising this inherent authority. This inherent authority applies in cases of law and in cases of equity, and it applies in cases involving appeals from administrative decisions, such as the internal revenue case of Commissioner Harris v. Commissioner. Of course, the internal revenue code has been compared to the veterans' laws in its complexity and opaqueness. So the veterans' court had inherent discretion and failed to exercise that discretion. The issue of substitution, it appears, need not have arisen. It doesn't need to be resolved in this case because the veterans' court had issued an unlawful decision on the mandates, and there were no further proceedings to be conducted in the veterans' court. So all that needed to be done was for the decision to be made effective, and then the case could have proceeded on remand to the Board of Veterans' Appeals. But, Mr. Smith, doesn't the death of the veteran under the statute moot the entire issue? The death of the veteran ends the veteran's right to receive benefits on his own claim under Section 1110. But where the ruling would have conclusive effect in the surviving spouse's accrued benefits plan, Your Honor, we don't believe it's moot, especially in these specific circumstances where the veteran had died after the cause was submitted. Now, on the mootness point separately, that's also true in any of the cases that we cited in which the court allowed the decision to remain effective. So you're arguing that it wouldn't be moot because, in connection with her survivor's benefit claim, there would be some relevance under res judicata or something of that sort? Yes, Your Honor. I think it's conceded that the ruling in the pending case would be preclusive of the issues that were actually decided. What about the government's right to appeal in the determination? Doesn't the death of the veteran really end the issue with respect to the disability compensation claim? And doesn't that necessitate vacating the decision because otherwise the government's right to appeal is precluded? There's two points there, Your Honor. The first is that, aside from the threshold question of whether Mrs. Padgett is a surviving spouse, which is easily resolved, aside from that, the claims are substantively identical. She is entitled to the same benefits that were due and unpaid. So the claims in the pending case and the accrued benefits claim are identical. But yet Congress has set forth this statutory arrangement with her claim being a separate claim. Yes, Your Honor. It is a separate claim authorized by a separate section of the statute. But the statute of code itself makes clear that it is the same claim based on decisions and based on the evidence in the file and decisions and ratings that were in effect at the time of the veteran's death. I mean, it would seem to me to be logical, reasonable, appropriate to enact a statutory scheme where, under the circumstances of this case, the surviving spouse would step into the shoes and carry forth rather than start all over again. But that's not what Congress did, and I'm not sure it's up to us to effect that same result. I understand that concern, Your Honor, but we don't believe that the statutory scheme precludes the relief that we're requesting. Specifically because it's a practical question that you've raised as to how could the government appeal, and if that practical question can be answered with a very simple remedy. If it appears that further proceedings are necessary, in this case it appeared that none were because the en banc court had issued its decision on the merits, but if further proceedings were necessary, this court, in Zavalkyk's opinion, suggested that the Court of Veterans' Appeals could perhaps remand the question of whether the surviving spouse qualifies as an accrued benefits claimant. Now, in Zavalkyk, the court said we will not require the Veterans' Court to make that such a limited referral. But wouldn't it be odd if she were substituted and continued the litigation when, in fact, the death of the veteran had terminated that particular claim that was in issue is ended? It seems to me that even substituting the spouse and permitting an appeal would present the Court of Appeals with an exercise of providing an advisory opinion that has relevance in no proceeding other than the separate proceeding that she would have to file under 5121. I understand that concern, but we believe it's not an advisory opinion because Mrs. Padgett would be defending the favorable decision that involves the very same claim, the same injury in fact, which gives her standing in her accrued benefits claim. And she has standing, and it's undisputed that she has standing to bring an accrued benefits claim based on the same injury. Congress established the right to receive compensation for that injury first in the veteran, and Congress also established Section 5121, which transferred or assigned the right to receive compensation from the veteran to his surviving spouse at the moment of death. Mrs. Padgett's claim under Section 5121 is pending. It's been pending at the VA since June 2005, and it was pending at the time that the Veterans Court issued its final decision dismissing the case. If the Veterans Court could have exercised discretion to allow Mrs. Padgett to defend that favorable ruling, if necessary, because it is the identical claim and because it has preclusive effect in her pending claim. Do you have any information in this case as to whether the government is going to sort of recontest this issue and intends to relitigate this 12-year claim, or whether the government is, has the government given you any indications one way or the other as to whether they will, in effect, abide by the decision in connection with her survivor's benefits claim? We've said a number of times survivor benefits. This is not a survivor benefit case. This is not a survivor benefit case. She has separate survivor benefit claims that are hers. This is an accrued benefit. These are his accrued benefits. Yes, that's right. This is totally different from survivor benefits. Yes, that's right, Your Honor. It's as though, well, all right, as long as we're clear. Two different things and two different outcomes. Yes, Your Honor. Mrs. Patrick filed her claim for accrued benefits and also for DIC, dependency and debt-reducing compensation, dependency insurance compensation, both in June of 2005. That's been pending at the VA for 16 months with nothing to show for it but a form letter asking her for a death certificate and for further information supporting her claim. But you haven't drawn a distinction, just following Judge Mayer's question. You haven't drawn a distinction. You haven't brought any claim. I gather you assume you're barred by statute from his estate bringing a claim for the accrued benefits? That's correct, Your Honor. Under the Bouchard case, the estate would not be an eligible claimant. Even though you're talking about past benefits, which would have accrued starting 12 years ago? Yes, that's right, Your Honor. Only the surviving spouse under Section 5121 is a qualified survivor has standing to pursue the claim for accrued benefits. That's been the holding of the Veterans Court in this court and the decisions of the common court, and we don't dispute that holding at all. Mrs. Patchett is pursuing her claim under Section 5121. But the key point is that it is the identical facts, law, and the identical evidence of the pending claim and that the pending claim will have preclusive effect in Mrs. Patchett's case. Let me turn quickly, Your Honor, to the question of what the government has indicated it's going to do. We haven't heard exactly what their strategy will be in the case. But given that the case is based on the same evidence in the file, it would be irrational to expect the administrative agency to do anything different. The agency will have the same evidence and the same law. If the agency, the regional office, which has had the claim for 16 months, acts as it did before, Mrs. Patchett will then be able to proceed to the Board of Veterans' Appeals. If it denies the claim, as it did before, the pending backlog with the BVA is now approximately two years. If the BVA denies that claim as it has before, she can proceed to the Court of Veterans' Appeals, which had this very case on these facts and evidence for approximately three years. It's very realistic to believe that we're looking at five to six years of proceedings to get back to the same point where we are today, relitigating precisely the same issues that the Veterans' Court has already decided and resolved in its opinion, which was issued and which we respectfully believe should be effective. So, again, we are asking the Veterans' Court to be instructed to exercise discretion as to whether to allow that decision to remain effective. Thank you, Mr. Smith. Mr. Hockey. Please, Court. Ms. Patchett poses a sympathetic case and offers many potential solutions to the situation she faces, but at the bottom line, you have a statutory procedure by which Ms. Patchett can obtain all the benefits that she's entitled to under the law. The statutory scheme, Section 58- Well, she can if she lives long enough. But the statutory scheme is in place to allow Ms. Patchett to pursue all of the benefits, as you indicated, Your Honor. And despite the various proposals, which we pointed out in our brief, might better be directed toward Congress for perhaps a change in the statute, there really hasn't been any identification of an error by the Court of Appeals for Veterans' Claims. They, in accordance with their existing case law and that of this Court, vacated the decision upon finding the veteran had died during the pendency of the claim, thereby opening the door for Ms. Patchett to pursue her accrued benefits claim without any obstacles. An obstacle in this case would be the Board decision, which initially affirmed a regional office decision denying the service connection finding in the first instance. Well, of course, it opens the door for her to proceed, but it also leaves the government free to re-litigate this whole thing all over again, which doesn't make much sense given the circumstances. But as this Court indicated in Zewelkink, in relation to the question of standing, the question here is can the delay associated with Ms. Patchett going back and litigating this issue count or, I guess, be sufficient enough to have required the Veterans' Court to do something other than what it did. And with respect to the standing question in Zewelkink, this Court said no, and we respectfully— But doesn't Haynes leave it open? No. The question here is did the Veterans' Court err at all in doing what it did with respect to not issuing a non-pro-tongue order, and like all the various jurisdictions which have considered that issue, the non-pro-tongue orders are issued in extraordinary circumstances. Similar to the standing question posed by this Court in Zewelkink, there has to be something significant to cause the Court to do that, something like, and in the case of most equitable relief questions, a finding that irreparable harm will result should the request of equitable relief be denied. And that's not the case here with the statutory procedure available to Ms. Patchett to obtain all the benefits that she's entitled to under the statute. She can go forward and get that, and as we indicated in our brief, given the language of the Supreme Court in the Gwinnett County Public Schools case, where there is an adequate remedy of law, the Court should not act in an equitable manner. And in this case, there is an adequate remedy of law. So you don't think the Veterans' Court has the discretion? We think that in this case the Veterans' Court has discretion generally. But they didn't recognize that they had discretion. I think in this case the Veterans' Court recognized that the statutory scheme in place answered the question for them. There was no need to resort to equity in this case. There is an adequate remedy of law in place by which Ms. Patchett can obtain all the benefits she's entitled to. To the extent that Ms. Patchett would like to change that, really the avenue is for Congress to step in and somehow change their statute, which in the briefs, Ms. Patchett raises a point with respect to the 2003 Veterans Benefits Act. And as we indicated, as recently as 2003, Congress had an opportunity to review the statutory scheme 5121, and they elected not to change this aspect of the scheme. But the Court didn't say that the remedy was adequate. They said there was a remedy. There is a remedy, and it can be fully realized. As counsel just explained, when you go back and relitigate this case, there's always going to be a possibility that for some reason the regional office might come to the same conclusion. But why the government's position is that it will have to be relitigated? I think that the government's position is that... That's not required by the statute, is it? No, no. Actually, under the accrued benefits statute, it is required that Ms. Patchett submit an accrued benefits claim to the regional office. That's not the same as relitigating the merits? The service connection aspect would not be relitigated should the regional office grant that aspect of it initially. The only possibility that would exist is if for some reason... I'm not sure that what you said wasn't contradictory. You said it didn't have to be relitigated provided when it's relitigated it's decided in her favor? Is that what you just said? I'm trying to identify how, of course, using the term relitigated in this case. In other words, if you define litigation to mean that, of course, as part of her statutory requirement to submit a claim under the accrued benefits statute, Ms. Patchett has to identify the basis for her claim to include the evidence that would support the service connection finding that was the subject of the vacated appeal. You're saying that she can't rely on all that's transpired so far? No, the vacated appeal has been vacated. However, I note, and the concern raised here is, well, this sort of horror tale is that this would start at the regional office and basically have to go all the way up to the Veterans Court again. The decision was vacated, but I think the order, the temporary order vacating a decision makes it pretty plain, you know, what the nature of that vacatory was relating to. But the regional office is not bound to that. No, it's not bound to that. So the regional office could put her to this whole exercise all over again. The regional office, that's a possibility. The idea of whether litigative delay is sufficient to form a basis for the granting of equitable relief, again, we say no. This Court has already found that. The statute doesn't require what we're calling re-litigation. No, the statute, well, it does actually, Your Honor. The statute, for the accrued benefits statute, places the burden on the accrued benefits applicant to establish the elements of his or her case. And one of these elements would be to establish the service connection of the deceased veteran. So the statute does require that, and that's what's done in all of these cases. This is a slightly different case, but not unusual in that there are— But you're saying the statute also prohibits invoking any kind of, I'll call it an estoppel, based on the litigation that the veteran performed before he died. In this case, the decision that Ms. Padgett would like to rely upon is vacated. So, like any other situation, it's not available for estoppel. So she has to go through the statutory steps that any accrued benefits claimant has to perform. What we're suggesting is that— But you're saying that it was required to be vacated? We're saying that there was no error— And that it was vacated in discretion. There was no error made by the Veterans Court, nor have we heard any error, any described errors made by the Veterans Court. Well, I want to go back to that. Did you say earlier the Veterans Court, in your opinion, had discretion? We think that generally the Veterans Court has discretion to issue equitable—in certain circumstances, equitable relief. We don't think this is one of those situations. In your view, the statute itself doesn't preclude the exercise of discretion? I think that— Or close the exercise of discretion? I think it certainly limits, if not removes, any real exercise of discretion in this situation. Well, that's why I'm asking these questions, because I'm trying to get a better handle on what the government's position is. Are you saying there is discretion, or the discretion is foreclosed? In this case, we think the existence of the statutory system, which provides all the procedural relief that Ms. Padgett is entitled to, and would allow her to gain full benefits under the statute, would effectively foreclose the exercise of discretion in this case. In your view, in the government's view, the court has no discretion? In this particular case, the discretion is answered—the question of what discretion the court has was answered by Congress when it created separate statute and separate statutory relief for Ms. Padgett. Well, how about the—you say the court didn't do anything wrong. How about the procedural quagmire it was in when most of the court didn't participate in this so-called embank? Well, the court—I mean, we've heard some—there's some language in the decision itself, but, I mean, we have to presume that the court acted in accordance with its own rules. Why would we have to presume that? Well, I mean— The dissent said it didn't. Pardon me? The dissent said it did not. The dissent did have some concerns about that, but, you know— Well, was the court acting properly, or was it not? Was it properly constituted, or was it not? As far as— If it was constituted, then maybe what it did was illegal. I frankly—I don't think that the record is sufficient enough for this court to hold that there was some sort of error in respect to the makeup or consideration of the issue by the— Well, it wasn't really pushed by the briefing, but it's in the opinion. It's certainly before us, is it not? The— Can't we say that if there's a court over there, they ought to all sit and bank unless they were recused for some recusable reason other than chicanery? Well, I mean, I'm not sure that—I mean, I think that the concern was that there was a desire on the part of one of the dissenting judges to have some sort of further en banc proceeding before—to flesh this issue out before issuing a decision. I'm not—I'm not so certain that the court or that the dissent indicated that there was some sort of error in following the specific rules of the court. So, again, I don't see any basis upon which this court could hold that there's— So you don't see this as sort of a revisiting of the Sixth Circuit situation in the cases that went to Supreme Court? You know what I'm referring to? Actually, I'm not. Oh, you don't. Okay. But, again, Ms. Padgett has a statutory remedy available to her, and so she's free to pursue it, which we understand she is pursuing it. And thank you. Okay. Thank you, Mr. Hockey. Mr. Smith? Is there anything to that, Mr. Smith, the constitution of the court? We did not address that in the briefs, Your Honor. No, I know, but, I mean, it's in the opinions. It is in the record, and we think that would be probably before the court. We haven't given you anything additional on that from our side, and we'd have to—if the court would like us to submit a supplemental pleading on that, then we'd be pleased to do that. But I don't have anything yet on that today. Mr. Hockey, I do have a couple other points, please. Mr. Hockey indicated that irreparable harm is necessary to justify the non-protunct relief, and that simply is not in any of the cases that we cited. Irreparable harm applies in the exhaustion context, and it was mentioned in the Randolph Shepard case that was cited in Zavalkia. So exhaustion—in this case, Mr. Padgett, the veteran, exhausted his administrative remedies for approximately 12 years before he died. Mrs. Padgett is pursuing her administrative remedies right now, and there's nothing in veteran statutes or the doctrine of exhaustion that requires the same issues to be litigated twice, when the agency has already had the opportunity to address specifically those points. The purpose of the exhaustion doctrine is to allow the agency to address the issues, which it has. Mr. Hockey suggested that there's a possibility that the regional office might reach the same result as it did before. On the same record, in the same facts, it would be irrational for it not to do so. The agency, if it is acting rationally, presumably would reach the same result. And so to suggest that it's just a horrible scenario or some remote scenario that we might have to relitigate the issue seems to me to miss the point totally. This case has already been pending for 14 years, and it's extremely likely that the agency will do as it did before and will be litigating this case for another five or six years. Mrs. Padgett is 75 years old, so six more years is too long. The government concedes that the underlying agency decision, which was unfavorable, was properly vacated. The government concedes that the Court of Veterans Appeals acted correctly in vacating that decision. Why is it necessary to vacate the underlying decision? Because that decision adversely affected Mrs. Padgett and would adversely affect her in her pending claim because it would have preclusive effect. That adverse effect establishes standing. It is the same injury in fact underlying the pending claim that is underlying her accrued benefits claim. She clearly has standing in her accrued benefits claim, and it's the same injury in fact in both cases. But isn't it significant the fact that the accrued benefits claim is not the claim that's before the court? Well, we believe that it is in substance the same, Your Honor. It's based on the same record. It's based on the same facts and the same law. It's authorized by a different section of the statute, and it's transferred from the veteran to the spouse. But otherwise, we believe there are no other issues once it is established that Mrs. Padgett is the surviving spouse. And by the way, that's in the record on the death certificate at page – that the state of Florida has already determined that Mrs. Padgett is the surviving spouse. So that shouldn't need to be resolved to establish that she is the qualified survivor under Section 512. Any more questions for Mr. Smith? No questions for Mr. Smith? Okay. Thank you, Mr. Smith and Mr. Hockey. The case is taken under submission.